THE STATE OF FLORIDA EX REL., W. M. HOLLOWAY, *Relator*,
v. WILLIAM N. SHEATS, AS STATE SUPERINTENDENT OF
PUBLIC INSTRUCTION OF THE STATE OF FLORIDA, *Respondent.*

Opinion filed December 11, 1919.

1.  The term "office" implies a delegation of a portion of the
    sovereign power to, and the possession 'of it by, the person
    filling the office, while an "employment" does not comprehend a delegation of any part of the sovereign authority.

2.  An employment does not authorize the exercise in one's own
    right of any sovereign power or any prescribed independent
    authority of a governmental nature; and this constitutes perhaps the most decisive difference between an employment and
    an office, and between an employee and an officer.

3.  Some offices are merely clerical 'or ministerial; but they
    are useful in enforcing the powers confererd on other officers
    or tribunals, and they are usually designated as offices by
    the law and have features of tenure and duration and of
    duties prescribed by law, which differentiate an office from
    a mere employment.

4.  The intent of a valid statute is the controlling law; and
    such intent .is presumed. to accord with organic law.

5.  Unless offices are created there can be no 'officers.

6.  The "positions" of "Rural School Inspectors" "created", by
    Chapter 6539, Acts of 1913, are, in view of the duties assigned
    to such inspectors, employments and not offices.  As no part
    'of the sovereign power of the State is delegated to the Rural
    School Inspectors authorized to be appointed by said statute,
    such inspectors are not officers but employees; and as the
    provisions of the constitution relative to the appointment andsalaries of officers are not applicable to employees, the provisions of the statute authorizing the appointment 'of Rural

School Inspectors and providing the method of paying their salaries must be observed.

A case of original jurisdiction.

Demurrer sustained.

*W. J. Oven,* for Relator;

*Glenn Terrell* and *George T. Morgan, for Respondent.*

WHITFIELD, J.—The alternative writ of mandamus issued herein alleges in effect that the relator was appointed Rural School Inspector by the Governor, under Chapter 6539, Acts of 1913, without nomination of the State Superintendent of Education, as required by the mentioned statute; that the duties of Rural School Inspector were performed for a stated time by the relator and that the respondent declines to make requisitions upon the Comptroller for payment of the salary and traveling expenses of Relator as Rural School Inspector, in accordance with the requirements of the statute. The command is that the respondent do make requisitions upon the Comptroller for the payment of the salary and traveling expenses of the relator, or show cause for not doing so.

The respondent demurred to the alternative writ on the grounds that the statute does not create any office, but provides for the employment of Rural School Inspectors, and that the statute has not been complied with in the employment of the relator. A return to the alternative writ was also filed. Relator moved to strike portions of the return and also moved to quash the return.

The statute to be considered is as follows:

"CHAPTER 6539 (No. 119).

"AN ACT Providing for the Betterment of the Rural Schools by Creating Rural School Inspectors and Prescribing their Duties and Making Appropriation for Their Compensation and Expenses.

"*Be It Enacted by the Legislature of the State of Florida*:

"Section 1.   Two Rural School Inspectors are hereby created by this Act who shall be appointed by the Governor upon the nomination of the State Superintendent of Public Instruction and shall hold their positions subject to the State Board of Education.   It shall be the duty of each of these Inspectors to devote all of his time and attention to the work of visiting and supervising rural schools, and shall perform such educational work when the rural schools are not in operation, as may be required of them by the State Board of Education, and shall work under the direction and advice of the State Superintendent of Public Instruction, to whom reports shall be made as required.   The sum of Two Thousand Dollars, ($2,000.00), for the salary of each is hereby appropriated and Twelve Hundred and Fifty ($1,250.00), for the traveling expenses of each, out of any funds in the State Treasury not otherwise appropriated, for each of the two years beginning July 1, 1913, and 1914, which shall be paid in monthly installments upon the requisition of the State Superintendent of Public Instruction upon the Comptroller of the State.

"Sec. 2.   All laws and parts of laws in conflict with this Act are hereby repealed.

"Sec. 3. This Act shall take effect immediately upon its passage and approval by the Governor.

"Approved June 5, 1913." Chapter 6539, Acts of 1913.

The Constitution contains the following provisions with reference to officers:

"The Legislature shall provide for the election by the people or appointment by the Governor of all State and County Officers not otherwise provided for by this Constitution, and fix by law their duties and compensation." Sec. 27, Art. 111, Constitution of 1885.

"Each and every officer of this State, including the members of the legislature, shall before entering upon the discharge of his official duties take the following oath of office: 'I do solemnly swear (or affirm) that I will support, protect, and defend the Constitution and Government of the United States and of the State of Florida; that I am duly qualified to hold office under the Constitution of the State, and that I will well and faithfully perform the duties of ..................... on which I am now about to enter. So help me God.'" Sec. 2, Art. XVI Constitution.

"The salary of each officer shall be payable quarterly upon his own requisition." Sec. 3, Art. XVI Constitution.

"The Legislature shall not create any office, the term of which shall be longer than four years." Sec. 7, Art XVI, Constitution.

"When any office, from any cause, become vacant, and no mode is provided by this Constitution or by the laws of the State for filling such vacancy, the Governor shall have the power to fill such vacancy by granting a commission for the unexpired term." Sec. 7, Art. IV, Consti tution.

"All officers that shall have been appointed or elected and that are not liable to impeachment, may be suspended from office by the Governor for malfeasance, or misfeasance, or neglect of duty in office, for the commission of any felony, or for drunkenness or incompetency, and the cause of suspensions shall be communicated to the officer suspended and to the Senate at its next session. And the Governor, by and with the consent of the Senate, may remove any officer, not liable to impeachment, for any cause above named. Every suspension shall continue until the adjournment of the next session of the Senate, unless the officer suspended shall, upon the recommendation of the Governor, be removed; but the Governor may reinstate the officer so suspended upon satisfactory evidence that the charge or charges against him are untrue. If the Senate shall refuse to remove, or fail to take action before its adjournment, the officer suspended shall resume the duties of the office. The Governor shall have power to fill by appointment any office, the incumbent of which has been suspended. No officer suspended who shall under this section resume the duties of his office, shall suffer any loss of salary or other compensation in consequence of such suspension. The suspension or removal herein authorized shall not relieve the officer from indictment for any misdemeanor in office. Sec. 15, Art. IV, Constitution.

The term "office" implies a delegation of a portion of the sovereign power to, and the possession of it by, the person filling the office, while an "employment" does not comprehend a delegation of any part of the sovereign authority. The term "office" embraces the idea of tenure, duration and duties in exercising some portion of the sovereign power, conferred or defined by law and not

by contract. An employment does not authorize the exer-. cise in one's own right of any sovereign power or any prescribed independent authority of a governmental nature; and this constitutes perhaps the most decisive difference between an employment and an office, and between an employee and an officer. See State *ex rel.* Clyatt v. Hocker, 39 Fla. 477, 22 South. Rep. 721, 63 Am. St. Rep. 174; Montgomery v. State, 107 Ala. 372, 18 South. Rep. 157, 159; State *ex rel.* Barnhill v. Thompson, 122 N. C. 493, 29 S. E. Rep. 720; McCormick v. Pratt, 8 Utah 294, 30 Pac. Rep. 1091, 17 L. R. A. 243 and notes; 22 R. C. L. p. 380; Attorney General v. Tillinghast, 203 Mass. 539, 89 N. E. Rep. 1058, 17 Ann. Cas. 449; Groves v. Barden, 169 N. C. 8, 84 S. E. Rep. 1042, Ann. Cas. 1917 D 316 notes; 22 R. C. L. 374, 381.

Some officers are merely clerical or ministerial; but they are useful in enforcing the powers conferred on other officers or tribunals, and they are usually designated as offices by the law and have features of tenure and duration and of duties prescribed by law, which differentiate an office from a mere employment.

In this case the authority and duties of a Rural School Inspector are "to devote all of his time and attention to the work of visiting and supervising rural schools, and * * * such educational work, when the rural schools are not in operation, as may be required of him by the State Board of Education, and shall work under the direction and advice of the State Superintendent of Public Instruction to whom reports shall be made as required."

These duties manifestly do not delegate to the Rural School Inspectors authorized to be appointed, any of the sovereign power of the State. "Visiting and supervising

rural schools" is not the exercise of a sovereign power and obviously the other duties prescribed do not involve or permit the exercise of any sovereign power. All the duties of a Rural School Inspector are performed "under the direction and advice of the State Superintendent of Public Instruction to whom reports shall be made as required." These duties do not constitute the Rural School Inspectors officers and the statute does not designate them as officers. The word "created" in the statute refers to the "positions" provided for therein. Salaries are paid to employees as well as to officers. An employee may be appointed as well as an officer.

The appointment is required to be made not by the Governor upon his own responsibility, but by the Governor upon the nomination of the State Superintendent of Public Instruction; the tenure is not for a definite term of not more than four years, as contemplated by the Constitution when statutory officers are created, but the term is "subject to the State Board of Education;" the salary is to be paid monthly and not quarterly as in the case of officers, and it is to be paid upon the requisition of the State Superintendent of Public Instruction and not upon the Rural School Inspector's own requisition, as provided by the Constitution in case of officers.

The intent of a valid statute is the controlling law; and such intent is presumed to accord with organic law. As this statute designates the authorized appointments to be made to "positions" and not to offices; and as the statute does not confer upon Rural School Inspectors any sovereign power or independent authority of a governmental nature, and does not accord with the provisions of the Constitution as to the manner of the appointment, the tenure, and the requisition for salaries of officers; and

as presumably a valid statute was intended; and as the organic limitations referred to are applicable to officers and not to mere employees, the intent of the statute must be held to authorize two employments and not to create two offices, or to authorize the appointment of two officers; and as the statute is the controlling law on the subject, its provisions for making the employment or appointments to "positions" and for paying salaries to persons employed must be complied with.

Even if the statutory "position" of "Rural School Inspector" may be regarded as an "office," an appointment by the Governor is not authorized by Section 7 of Article IV of the Constitution, since if a vacancy occurs a "mode is provided  *  *  * by the laws of the State for filling such vacancy" viz: Chapter 6539, Acts of 1913, above quoted; and Section 7 of Article IV is not applicable for the further reason that there being no term fixed by law for a Rural School Inspector there can be no appointment of one "by granting a commission for the unexpired term." The Governor has no inherent power to appoint. People *ex rel.* Richardson v, Henderson, 4 Wyo. 535, 35 Pac. Rep. 517, 22 L. R. A. 751; 22 R. C. L. 424; Fox v. McDonald, 101 Ala. 51, 13 South. Rep. 416, 21 L. R. A. 529 46 Am. St. Rep. 98; Cox v. State, 72 Ark. 94, 78 S. W. Rep. 756, 105 Am. St. Rep. 17; Mayor, etc., of Baltimore v. State, 15 Md. 376, 74 Am. Dec. 572.

Whether "offices" or "positions" of employment should be "created" as a means to accomplish the purpose of the statute, was for the legislature to determine. Employments or officers may be "created" by statute and if so enacted employees or officers may be appointed by the Governor. It was within the power of the legislature to provide for employments to be made by the Governor's

appointment upon the nomination of the State Superintendent of Public Instruction to perform the duties defined by the statute; and as under the Constitution and statutes both the Governor and the State Superintendent of Public Instruction have supervising authority in the State Public School System, the provision as made for appointments to the "positions" of Rural School Inspectors, seems to be appropriate. The inspection and supervision of schools may be accomplished through the medium of officers or of employees as the lawmaking power provides. In this case the mere creation of the "positions" of two Rural School Inspectors to be filled by Executive appointment does not create two offices; and unless offices are created there can be no officers.

The holding in this case is not in conflict with Advisory Opinion to the Governor, 76 Fla. 500, 80 South. Rep. 17.

The demurrer to the alternative writ is sustained.

BROWNE, C. J., AND TAYLOR, ELLIS AND WEST, J. J., concur.